UNION PAC. RY. CO. v. JARVI.

(Circuit Court of Appeals, Eighth Circuit. October 17, 1892.)

No. 128.

**1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—MINES.**

Where a certain part of the roof of a mine, from which rock falls and injures a workman, was known to the officers to consist of treacherous rock, needing constant watching, and liable to be loosened if wet; and where it appears that it had not been properly tested for weeks; that it had long been wet; that similar rock near by had been supported or removed,—it is a question for the jury whether the failure to support or remove such rock was a lack of ordinary care in providing a safe place for the miners to work in.

**2. SAME—CONTRIBUTORY NEGLIGENCE.**

Where a miner injured by rock falling from the mine roof has been employed in that dip only two weeks, knows nothing of inspecting roofs, works in darkness but for the light in his cap, is unable to reach the roof in that place with his hand, (the proper test being sounding with the hand, a pick, or a cane,) has seen rock fall from that place and elsewhere all over the slope, and testifies that he apprehended no greater danger there than elsewhere, and where miners frequently pass under the place without apparently apprehending danger, the question whether he is guilty of contributory negligence is for the jury.

**3. SAME—SCOPE OF EMPLOYMENT—MINERS' RULES.**

A rule adopted by miners, and accepted by their employer, required cars to be furnished at the nearest switch for the miners to fill. A miner, compelled for two weeks to go beyond the nearest switch for his cars, in disregard of the rule, was injured by rock falling from the roof while so doing, at a place under which he had to pass to and from his work daily, there being no evidence that he was aware of the rule. *Held,* that he was injured while acting in the line of his employment.

**4. TRIAL—INSTRUCTIONS.**

It is not error to refuse a requested charge when the rule of law embodied therein is properly laid down in the general charge.

In Error to the Circuit Court of the United States for the District of Wyoming.

Action by Edward Jarvi against the Union Pacific Railway Company for injuries received in its employ. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

Statement by SANBORN, Circuit Judge:

The defendant in error, who was the plaintiff below, obtained a judgment against the Union Pacific Railway Company for $5,000 for injuries which he received from the falling of a stone from the roof of a mine in which he was employed by the defendant as a miner. In his complaint he alleged that his injury resulted from the failure of the defendant to use reasonable care to support this roof, and provide a safe place for him to work. The defendant, in its answer, denied all negligence on its part, and alleged that the plaintiff was injured at a place where he was out of the line of his employment, and that he was himself guilty of negligence that caused the injury. The testimony proved that at the time of the injury the plaintiff had been at work about two weeks in the dip slope air course of a mine about 100 yards from the junction of the dip slope and the main slope. About 75 feet from this junction the air course in which plaintiff was working branched off from the dip slope. There was an iron railroad track extending from the main slope down the dip slope and connecting by a switch with a track which extended down the air course to the point where plaintiff was at work, and plaintiff's wages were measured by the amount of coal he produced. He was furnished seven cars each day, which he obtained at the junction of the main and dip slopes, pushed to his place of working, and filled. When loaded, these cars were drawn by mules driven by defendant's employes to the main slope, where they were taken out of the mine by machinery. On the day of the accident there was no car at the nearest switch or at his working place for him to fill in the morning, and, after digging about an hour and a half, he walked out towards the main slope to get a car, and after he entered the dip slope, and, either at the junction of the two slopes or a few feet down the dip slope therefrom, he was caught and injured by a large stone that fell from the roof. In 1885 the miners adopted a rule, which was assented to by defendant, that the empty cars should be delivered by defendant's drivers at the switch nearest to the working place of the miners respectively, but none had ever been so delivered to plaintiff while he was at work in the air course where he was injured. He and his partner had uniformly obtained their cars at the main slope; and there was no evidence that this rule was known to the plaintiff. The plaintiff testified that at a point about five yards from the main slope, as he was walking up the dip slope to get his car, the stone fell upon him from the roof; that he passed this place morning and evening in going to and returning from his work, and seven times a day as he went after cars; that the roof was about eight feet high, so that he could not reach it

with his hand, but that he could see it with his lamp; that it was wet. and he had seen stone fall from the roof at this point once before, but that small pieces had fallen from the roof all over the mine; that moisture in the roof caused the stones to become loose, and made them liable to fall, but that he did not know this until after the accident; that Mr. Rodgers, the mining boss, kept lots of men in the mine to fix the roof, but he (the plaintiff) had never had any experience in that kind of work, and did not know what kind of a roof it was in the dip slope.

Two miners who were working down the slope, and who passed under this roof frequently every day, testified that over the coal which had been removed from this slope was a clay rock about three feet thick, which water disintegrated, and that a large part of this roof was wet. Another witness testified that some weeks before, at the point where the dip slope and main slope joined, the stone kept coming down. and the defendant thereupon blasted out the clay rock in the roof of the main slope at this point until it came to a solid sand rock above it, which formed a good roof. The witnesses for the defendant testified that the accident happened at the junction of the main and dip slopes, and was caused by the fall of a piece of this clay rock, which was found to have a seam in it that no inspection would detect. G. L. Black, the general superintendent of all the mines of the defendant, testified that it was the duty of Mr. Rodgers, the mine boss, to see to the safety of the men. L. R. Myers, the superintendent of the mine in which the accident occurred, called this clay rock "bastard rock," and testified that it did not make a very good roof in itself; that at times it was a rather treacherous kind of stone. W. H. Brown, the defendant's general inspector of mines, testified that the roof of this mine at the junction of the two slopes was not a good roof, and so they decided to, and did. take down the clay rock at this point about two months before the accident. That he inspected the mine once a month. That a large portion of the dip slope was timbered at the time of the accident, and he thought it was timbered within 20 feet of the main slope. That "the roof in the dip slope was pretty fair; part of it first class. It was not a bad roof. I am sure of that. It was pretty fair. Of course, there are degrees of badness as well as of goodness. The roof in the dip slope was neither good nor bad; it was a pretty fair roof. A good roof is one that don't want any timber; a fair roof is one that might possibly go, but needs watching. It was a fire-clay roof, and you want to watch a fire-clay roof a little closer than rock roof." That the proper way to test such a roof is by sounding it with the hands, or with a pick or cane. Walter Rodgers, the mine boss, whose duty it was to watch the men and their work and see to their safety, testified that he sometimes saw the miners in the dip slope go to the main slope to get their cars. That he visited the part of the mine where the accident happened daily. That he was as careful as he could be in looking at the roof to see if it was safe, and believed it was so before the accident; but he nowhere testified that he sounded or tested it with hand, pick, or cane.

Defendant requested the court to instruct the jury to return a verdict in its favor, but that request was refused, and this refusal was one of the errors assigned; others relate to the charge to the jury.

John W. Lacey, (John M. Thurston and Willis Van Devanter, on the brief,) for plaintiff in error.

Constantine J. Smyth, (Timothy J. Mahoney, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge. It is the duty of the employer to exercise ordinary care to provide a reasonably safe place in which his employe may perform his service. It is his duty to use diligence to keep this place in a reasonably safe condition, so that his servant may not be exposed to unnecessary and unreasonable risks. The care and diligence required of the master is such as a reasonably prudent man would exercise under like circumstances in order to protect his

servants from injury. It must be commensurate with the character of the service required, and with the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. Obviously, a far higher degree of care and diligence is demanded of the master who places his servant at work digging coal beneath overhanging masses of rock and earth in a mine than of him who places his employe on the surface of the earth, where danger from superincumbent masses is not to be apprehended. A reasonably prudent man would exercise greater care and watchfulness in the former than in the latter case, and, throughout all the varied occupations of mankind, the greater the danger that a reasonably intelligent and prudent man would apprehend, the higher is the degree of care and diligence the law requires of the master in the protection of the servant. For a failure to exercise this care, resulting in the injury of the employe, the employer is liable; and this duty and liability extend, not only to the unreasonable and unnecessary risks that are known to the employer, but to such as a reasonably prudent man in the exercise of ordinary diligence—diligence proportionate to the occasion—would have known and apprehended. Cook v. Railroad Co., 34 Minn. 45, 24 N. W. Rep. 311; Hayden v. Manufacturing Co., 29 Conn. 548; Noyes v. Smith, 28 Vt. 59; Gibson v. Railroad Co., 46 Mo. 163; Nadau v. Lumber Co., (Wis.) 43 N. W. Rep. 1135, 1137; Hutchinson v. Railroad Co., 5 Exch. 343; Huddleston v. Machine Shop, 106 Mass. 282; Snow v. Railroad Co., 8 Allen, 441; Sullivan v. Manufacturing Co., 113 Mass. 396; Ryan v. Fowler, 24 N. Y. 410; Patterson v. Railway Co., 76 Pa. St. 389; Swoboda v. Ward, 40 Mich. 420.

This duty and liability rest upon the same principle, and are governed by the same rules, as the duty and liability to provide and keep in reasonably safe condition the machinery and tools furnished employes. While the master is not a guarantor or insurer of the safety of the place in which he puts his servant, or of the safety of the tools or machinery he furnishes, he is in every case bound to exercise that care and diligence proportionate to the occupation and the occasion which a reasonably intelligent and prudent man would use under like circumstances both to provide and keep in reasonably safe condition the place of work and the machinery and appliances requisite to its performance. This duty is personal to the master, and cannot be so delegated as to relieve him of liability. Railroad Co. v. Herbert, 116 U. S. 642, 648, 652, 6 Sup. Ct. Rep. 590.

On the other hand, it is the duty of the servant to exercise that degree of care, commensurate with the character of his occupation and the occasion, which a reasonably prudent person would employ under like circumstances in order to protect himself from injury; and, if he fails to exercise this care, he cannot recover of the master for an injury to which his own negligence has contributed, even though his master has failed to exercise due care on his part. He cannot recklessly expose himself to a known danger, or to a danger which an ordinarily prudent and intelligent man would, in his situation, have apprehended, and then recover of the master for an injury his own recklessness has caused. Cunningham v. Railway

Co., 17 Fed. Rep. 882, 886; Bunt v. Mining Co., 138 U. S. 483, 485, 11 Sup. Ct. Rep. 464; Railroad Co. v. Jones, 95 U. S. 439, 443; Kane v. Railway Co., 128 U. S. 91, 94, 9 Sup. Ct. Rep. 16; Goodlett v. Railroad, 122 U. S. 391, 411, 7 Sup. Ct. Rep. 1254; Kresanowski v. Railroad Co., 18 Fed. Rep. 229, 234, 235; Railroad Co. v. Nickels, 4 U. S. App. 369, 1 C. C. A. 625, 50 Fed. Rep. 718; Railroad Co. v. Davis, 53 Fed. Rep. 61.

But the degrees of care in the use of a place in which work is to be done, or in the use of other instrumentalities for its performance, required of the master and servant in a particular case, may be, and generally are, widely different. Each is required to exercise that degree of care in the performance of his duty which a reasonably prudent person would use under like circumstances; but the circumstances in which the master is placed are generally so widely different from those surrounding the servant, and the primary duty of using care to furnish a reasonably safe place for others is so much higher than the duty of the servant to use reasonable care to protect himself in a case where the primary duty of providing a safe place or safe machinery rests on the master, that a reasonably prudent person would ordinarily use a higher degree of care to keep the place of work reasonably safe if placed in the position of the master who furnishes it than if placed in that of the servant who occupies it. Of the master is required a care and diligence in the preparation and subsequent inspection of such a place as a room in a mine that is not, in the first instance, demanded of the servant. The former must watch, inspect, and care for the slopes through which and in which the servants work as a person charged with the duty of keeping them reasonably safe would do. The latter has a right to presume, when directed to work in a particular place, that the master has performed his duty, and to proceed with his work in reliance upon this assumption, unless a reasonably prudent and intelligent man in the performance of his work as a miner would have learned facts from which he would have apprehended danger to himself. Russell v. Railway Co., 32 Minn. 230, 20 N. W. Rep. 147; Hutchinson v. Railroad Co., 5 Exch. 343; Gibson v. Railroad Co., 46 Mo. 163; Cook v. Railroad Co., 34 Minn. 47, 24 N. W. Rep. 311.

The degrees of care required of the master and servant also differ, because defects in a piece of machinery or in the roof of a mine that to the eye of a competent inspector, such as the master employs, portend unnecessary and unreasonable risks and great danger, may have no such significance to a laborer or miner who has had no experience in watching or caring for machinery or roofs of slopes in a mine, and the latter is not chargeable with contributory negligence simply because he sees or knows the defects, unless a reasonably intelligent and prudent man would, under like circumstances, have known or apprehended the risks which those defects indicate. The dangers, and not the defects merely, must have been so obvious and threatening that a reasonably prudent man would have avoided them in order to charge the servant with contributory negligence. Kane v. Railway Co., 128 U. S. 94, 9 Sup. Ct. Rep. 16; Railway Co. v. McDade, 135 U. S. 570, 573, 10 Sup. Ct. Rep. 1044; Cook v. Railroad Co.,

34 Minn. 45, 47, 24 N. W. Rep. 311; Myers v. Iron Co., 150 Mass. 125, 22 N. E. Rep. 631.

Applying these rules of law to the facts of this case, ought the court below to have instructed the jury to return a verdict for the defendant? Ordinarily, in actions like the present one, questions of negligence are for the jury. The ordinary care which the parties are required to use in the discharge of their respective duties to each other so varies with the situation of the parties and the circumstances of each particular case, the measurement of it depends so much upon knowledge and experience of practical business affairs, that the policy of the law to relegate these questions to the determination of 12 practical men has long been settled. It is only when the facts are undisputed, and are such that reasonable men can fairly draw but one conclusion from them, that the question of negligence is ever considered one of law for the court. Railway Co. v. Ives, 144 U. S. 409, 417, 12 Sup. Ct. Rep. 679; Railway Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. Rep. 569; Railroad Co. v. Pollard, 22 Wall. 341; Bennett v. Insurance Co., 39 Minn. 254, 39 N. W. Rep. 488; Abbett v. Railway Co., 30 Minn. 482, 16 N. W. Rep. 266.

This record is far from presenting a case where all reasonable men must draw the inference either that the plaintiff was guilty of, or the defendant free from, negligence. The testimony was conflicting as to the place and cause of the injury. As to the defendant's negligence, it appeared that the roof in the dip slope where this accident happened was composed of a clay rock about three feet thick, that defendant's inspectors, whose duty it was to keep this roof reasonably safe, knew to be a treacherous rock that needed constant watching; a rock that water disintegrated, and caused to become loose and fall. It appeared that the only way such a roof could be properly tested was by sounding it with the hand or a pick or cane, and there was no testimony that it had been so tested or sounded for weeks, although the chief inspector testified that, in his estimation, this was not a good roof; that it was one that might possibly go, but needed watching; that through the greater part of this dip slope the roof had proved so poor that the defendant had supported it with timber; that it had not done so at this point, and that at a point but a few feet distant, where the two slopes joined, this rock had so crumbled and fallen that defendant had blasted it all down, and removed it, two months before; and there was testimony that the roof at the place of the accident had long been wet. In view of this testimony, it certainly was a fair question for the jury whether or not the defendant's failure to protect this particular portion of the roof by timbers or to remove it by blasting was not a lack of ordinary care. As to the contributory negligence of the plaintiff, in view of the facts that he had been directed to go to work in this dip slope but two weeks before; that he had a right to presume, in the first instance, that the defendant was inspecting and keeping this roof reasonably safe; that he had never been employed in caring for or inspecting roofs; that he was working and moving in darkness, made visible only by his lamp in his cap; that the roof at this point was too high for him to sound with his hand; that, although he had seen

stone fall once from this place, pieces had also fallen all over the slope; that miners who were working in the same slope, and passing under this roof frequently, continued at their work without apparently apprehending danger from this place; and that plaintiff himself testified that he apprehended no more danger here than from any other place in the roof,—no court would be justified in holding that it conclusively appeared from this evidence that a man of ordinary intelligence and prudence would, under like circumstances, have apprehended the risk and danger. The court below was right in leaving all these questions of negligence to the jury.

In the charge to the jury the court below stated that the rule which required the defendant to deliver empty cars at the nearest switch was obviously a measure of convenience to the miners, and not a measure of safety; that it could not have much weight in the determination of this case; and declined to charge, as requested by defendant, that, if the defendant employed a sufficient number of drivers to deliver the empty cars in accordance with the rule, plaintiff was not in the line of his duty when he went beyond the nearest switch for a car, and therefore could not recover; and this ruling of the court was assigned as error. There was no error in this ruling. There was no evidence that plaintiff ever knew of this rule. The defendant had constantly disregarded it in its dealing with him and his partner, and had compelled them to go to the main slope for every car they had received during the two weeks they had worked in this air course. The roof that fell was one under which the plaintiff was obliged to pass in going to and returning from his work, and when the defendant failed to deliver cars to him he was in the line of his employment in going out under this roof to get them.

The defendant requested the court to charge the jury as follows:

"If you find from the evidence that the plaintiff, prior to receiving the injuries complained of, had knowledge of facts such as would lead a man of ordinary prudence to believe that there was danger of injury from falling rock at the place where the injury occurred, and with such knowledge continued to go to that place without notifying the proper officers of the defendant company of such danger, and, while continuing to go there, received the injury complained of, then, and in that case, the plaintiff cannot recover."

The court refused to give this request, but in his own language, in his general charge, explained the rule referred to therein, and the defendant assigns this as error. The request fairly states the law, and might well have been given. The charge of the court upon this subject is quite extended, and will not be here repeated. It is sufficient to say that it has been carefully considered, and we are satisfied that it substantially states the rule sought by the defendant, so that the jury could not have been misled by it. It is not error to refuse to give requests of counsel where the rules of law embodied in them are properly laid down in the general charge of the court. Railway Co. v. Washington, (8th Circuit,) 4 U. S. App. 121, 1 C. C. A. 286, 49 Fed. Rep. 347, 353.

This disposes of all the errors assigned in this case, and the judgment below is affirmed, with costs.