## CHICAGO, ST. P. & K. C. RY. CO. v. CHAMBERS.

### (Circuit Court of Appeals, Eighth Circuit. May 6, 1895.)

### No. 519.

1. NEGLIGENCE—QUESTION FOR JURY.

In an action against the K. Ry. Co. for causing the death of one C., it appeared that the tracks of the K. Co., running north and south, crossed at grade the tracks of the S. Co., running east and west, a stop board being placed on each line 400 feet from the crossing, and the rule of the road giving the right of way to the train which first arrived at its stop board. There was no obstruction to the view between the tracks. A freight train, of which C. was engineer, consisting of 28 cars, approached the crossing from the east, on the S. road, in the night, stopped at the stop board, and, no train on the K. road being in sight, whistled twice, and started for the crossing. After starting, the fireman notified C. that a train was approaching on the K. road, from the south, whereupon C. stopped his train, about 200 feet from the crossing, until the K. train was seen to stop at its stop board, when C. again whistled twice, and started for the crossing, and the fireman, having reported the stopping of the K. train, turned to shovel coal into the fire box. Just as C.'s engine reached the crossing, it was struck by the K. train, and C. was killed. The headlight of the S. train was burning at the time, and was seen by a brakeman and a passenger on the K. train. *Held,* that it was not error to refuse to direct a verdict in favor of the K. Co., either on the ground that no negligence of the K. Co. was shown, or that C. was shown to be guilty of contributory negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE—FELLOW SERVANTS.

*Held,* further, that it was no defense for the K. Co. that the fireman on the S. train, C.'s fellow servant, was guilty of contributory negligence.

3. SAME—ORDINARY CARE.

*Held,* further, that since the engineer of the K. train had no right to proceed if he could have discovered the other train by the use of ordinary care, it was not error to refuse to instruct the jury that if they believed the headlight of the S. train was not lighted, and the engineer of the K. train thereby warned of its approach, he had a right to proceed.

4. SAME—PROXIMATE CAUSE.

*Held,* further, that it was not error to refuse to instruct the jury that a failure to light the headlight of the S. train would bar a recovery by C., since it did not appear that the absence of such light contributed to cause the accident.

5. EVIDENCE—DESCRIPTION OF LOCALITY.

*Held,* further, that it was not error to permit a civil engineer, who had made a survey of the locality, to testify that, if the headlight on the S. train was lighted, it would be visible at any point within 400 feet of the crossing, from any point on the K. tracks between the stop board and the crossing.

In Error to the Circuit Court of the United States for the District of Minnesota.

This was an action by Catharine Chambers, as administratrix of Patrick Chambers, deceased, against the Chicago, St. Paul & Kansas City Railway Company, to recover damages for the death of the intestate. Judgment was rendered in the circuit court for the plaintiff. Defendant brings error. Affirmed.

Dan W. Lawler and Lafayette French, for plaintiff in error.
Nathan Kingsley and H. H. Field, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. About 4 o'clock on a dark morning in October, 1891, at Taopi, Minn., a passenger train of the plaintiff in error, the Chicago, St. Paul & Kansas City Railway Company, hereafter called the "Kansas City Company," collided with a freight train of the Chicago, Milwaukee & St. Paul Railway Company, hereafter called the "St. Paul Company," at the intersection of the railroads of these corporations at that place, and Patrick Chambers, the engineer of the freight train, was killed. Catharine Chambers, his widow, the defendant in error, brought an action, as administratrix of her husband's estate, against the Kansas City Company for negligence which she alleged caused the death of her husband, and recovered a judgment of $5,000. The writ of error in this case was sued out to reverse this judgment.

The alleged errors upon which counsel for plaintiff in error seem to rely most confidently are that the court refused to grant their request to instruct the jury to return a verdict for the Kansas City Company at the close of the plaintiff's evidence, and again at the close of all the evidence. This request was based on the grounds that the evidence disclosed no negligence on the part of the Kansas City Company, and that it conclusively appeared from the evidence that Chambers was guilty of negligence that contributed to cause his death. If there was any error in the refusal to grant this request at the close of the plaintiff's evidence, the company waived it by subsequently introducing evidence on its behalf, and proceeding with the trial of the case on its merits. Insurance Co. v. Frederick, 7 C. C. A. 122, 125, 126, 58 Fed. 144, and cases cited.

We turn to the consideration of the refusal to grant this request at the close of all the evidence. There was testimony in the case at that time tending to show these facts: The railroad of the St. Paul Company runs nearly east and west at Taopi, and the railroad of the Kansas City Company runs nearly north and south through that place, and crosses the road of the St. Paul Company at grade. There was a stop board on the road of the St. Paul Company about 400 feet east of the crossing, and one on the Kansas City road about the same distance south of the crossing. There were no obstructions to the vision in the space between these railroads for a distance of more than 400 feet southeasterly of their place of intersection. The train approaching the crossing which first arrived at its stop board had the right of way over the crossing. The freight train of the St. Paul road was running west, and consisted of 28 freight cars and a caboose. When it arrived at Taopi the engine stopped nearly opposite the stop board on that road for about 50 seconds. Chambers, the engineer, was on the north side of his engine, and his fireman was on the south side of it. After the stop Chambers gave two short blasts of the whistle, and started for the crossing. Up to this time there does not seem to have been any appearance of a train approaching upon the Kansas City road. Just after he made this start for the crossing, his fireman told him that there was a train coming from the south on that road. He asked if it was going to stop, and the fireman replied that it was coming pretty fast, and he could not tell. Cham-

bers then shut off steam until the fireman told him that the Kansas City train had stopped, and it had in fact stopped near its stop board. The St. Paul engine was then about 200 feet from the crossing, moving slowly towards it, and under perfect control. When the fireman informed Chambers that the Kansas City train had stopped, he gave two sharp blasts of his whistle, and started again for his crossing, and the fireman turned around, and commenced shoveling coal into the fire box. Just as the St. Paul engine was crossing the tracks of the Kansas City Company the engine of that company struck it, and Chambers was killed. The night was dark, and the engine of the St. Paul Company was burning a headlight according to the testimony of the plaintiff's witnesses, and it was not burning one according to the testimony of the defendant's witnesses. A passenger and a brakeman on the Kansas City train saw the lights on the St. Paul train, and knew that it was there when the Kansas City train was about 300 feet south of the crossing; but the engineer of that train testified that he did not see it until he was upon it. After the Kansas City train stopped at its stop board, neither Chambers nor his fireman looked for or saw it until an instant before it struck their engine, when they were too near the crossing to avoid the accident. Some of the testimony which supports these facts is contradicted, but for the purpose of deciding the question under consideration the court below was, and this court is, bound to consider these facts as proved, and to consider the fact established that the St. Paul engine was burning a bright headlight, because there was sufficient testimony to sustain a finding of the jury that these facts existed.

Upon this state of facts no argument can be necessary to show that there was ample testimony in this case to support a finding that the engineer of the Kansas City train was negligent, and that his negligence was the proximate cause of the injury. When he arrived at his stop board, the St. Paul engine had stopped at the stop board on its railroad, and had started again, and was half way from its stop board to the crossing, moving slowly towards the latter, and under perfect control. That engine had the right of way. A brakeman and passenger on the Kansas City train saw the lights upon it, and knew that it was there, in ample time to have prevented the injury. It was the duty of the engineer of that train to look for it, and, if a man of reasonable prudence and diligence could have seen it, to see it, and to hold his train until the St. Paul train had crossed. The fact that a brakeman and a passenger on his train, upon whom much less responsibility rested, saw it, and were forewarned of the danger 300 feet distant from the crossing, is certainly sufficient evidence to warrant a jury in finding that a man of reasonable prudence and diligence would have seen it; and the fact that this engineer drove his engine upon the crossing under the circumstances without seeing it furnishes ample evidence that he was not exercising ordinary care to prevent this collision.

Nor are we convinced, after a careful examination of all the evidence in this record, that it so conclusively appears from the testi-

mony that Chambers was guilty of contributory negligence that no reasonable man could fairly draw the opposite conclusion. It is only when the facts are undisputed, and are such that reasonable men may fairly draw but one conclusion from them, that the question of negligence is ever considered one of law for the court. Railway Co. v. Jarvi, 10 U. S. App. 439, 451, 3 C. C. A. 433, 437, 438, and 53 Fed. 65, 70; Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569; Railroad Co. v. Pollard, 22 Wall. 341; Bennett v. Insurance Co., 39 Minn. 254, 39 N. W. 488; Abbett v. Railway Co., 30 Minn. 482, 16 N. W. 266. There is no evidence whatever of any negligence on the part of Chambers prior to the time when the Kansas City train arrived at its stop board and stopped. Up to that time he had used every reasonable precaution to prevent a collision. His engine was then moving slowly towards the crossing within 200 feet of it, held under perfect control, awaiting the answer of his fireman to the question he had prudently put, "Is the Kansas City train going to stop?" His fireman was on the south side of the engine, and it was his duty to keep watch of the train approaching from the south, while it was the duty of the engineer, who was on the north side of the engine, to watch for obstructions in front, or trains coming from the north of his engine. He had the right of way over the crossing. The instant that the Kansas City train stopped, it was his duty to take his train across as speedily as he could safely do so, and it was the duty of the engineer of the Kansas City train to hold it back until the St. Paul train had made the crossing. When the engineer of the Kansas City train came towards that crossing, it was his duty to stop at the stop board, and to hold his train back from the crossing until the St. Paul train was over it. Chambers had learned that he was faithfully discharging that duty, that he had stopped at his stop board, and he no doubt presumed that he would continue to discharge his duty by holding back his train until the St. Paul train was over the crossing. It is certainly not so clear as to be stated as a matter of law that a man of ordinary prudence and diligence would not have made so reasonable a presumption. It is earnestly argued that it was his duty to look for that train after he started for the crossing the last time, that it was his duty to keep his train under such perfect control as he approached the crossing that he could stop it at any time, and that the evidence is that, after the Kansas City train stopped, he did not look for it, that his train was moving at the rate of six or eight miles an hour when the collision occurred, and that his negligence in these particulars contributed to the injury. But it must be borne in mind that he had a fireman on the side of the engine towards the approaching Kansas City train, who had been watching it, and whose duty it was to continue to do so; and that there was an engineer on the Kansas City train, whose duty it was to hold it back until he had passed. It was only upon the presumption that both these men would fail in the discharge of their respective duties that his protection required him to personally watch that standing train, while it was his primary duty to watch for trains from the north and for

obstructions in front, and to drive his engine as speedily as safety would permit over the crossing. We are unable to persuade ourselves that all reasonable men would have drawn the conclusion that an engineer in the exercise of ordinary care under these circumstances would have presumed that both his fireman and the engineer of the approaching train would fail in the discharge of their respective duties, and would have looked for that standing train during the brief period when he was running the 200 feet to reach the crossing. Nor are we convinced that they would draw the conclusion that his failure to look contributed to cause the injury. It is always difficult in the night to tell whether a light is approaching or stationary when one is in or near the line it is following, and it is at least doubtful whether, if Chambers had looked towards the standing train, he would have perceived its approach in time to have stopped his long freight train after he had put it in motion to reach the crossing; and, if he had perceived that it was approaching, he might well have inferred that it was not approaching to cross then, but merely to stop again nearer to the crossing, and to wait there, ready to cross, when his train had passed. This certainly would not have been an unnatural supposition in view of the fact that he had the right of way, and that the Kansas City train had stopped in the proper place.

Whether or not he was negligent in controlling his train as he came upon the crossing depended very much upon the considerations to which we have referred, upon whether he saw or might have seen that the Kansas City train was approaching, and upon whether or not he knew or might have known that it was approaching, not to stop again and wait, but to try to cross before his train had passed. If he saw, or might in the exercise of ordinary care have seen and have known, all these facts in time to have stopped his long train of 28 cars before his engine came upon the crossing, he should have stopped; but if, in the exercise of ordinary care, he would not have seen or known that the Kansas City train was approaching to cross then, until it was too late for him to stop his train, it might have been his duty to drive it forward with all possible speed, so that his engine might pass beyond the crossing before the Kansas City train could strike. To determine whether or not the deceased was guilty of contributory negligence in this case required a careful consideration of all the questions to which we have referred, and these questions have been properly considered by the jury under clear and careful instructions regarding the law. The inference of contributory negligence from the complicated facts of this case was not, in our opinion, so clear and conclusive that the court should have declared its existence as a matter of law.

It was no defense for the Kansas City Company that the fireman on the St. Paul train was guilty of negligence that contributed to the injury. His negligence was not imputable to Chambers. The doctrine of imputed negligence rests upon the relation of master and servant or of principal and agent. Railway Co. v. Lapsley's Adm'r, 2 C. C. A. 149, 151, 152, 51 Fed. 174, 176, 177, and 4 U. S. App. 542, 554–556, and cases cited. There was no such relation between this en-

gineer and his fireman. It is true that there is evidence that the fireman was subject to the orders of his engineer, but that was because the discharge of the duties they were performing for a common master required that their work should be supervised by a single mind. This did not make one of them in any sense the agent or the servant of the other in the discharge of any duty imposed upon either of them by their respective positions in the employment of the railroad company. They were still the servants of the railroad company. A decisive test of this question is this: If the Kansas City Company is exempt from the damages caused by its negligence to the engineer of the St. Paul train, because the fireman of the latter train contributed to cause those damages, then the engineer must be equally liable to the Kansas City Company for any damage which that company sustained through the negligence of this fireman. But it is absurd to suppose that the engineer of the St. Paul train could be made to pay for damages resulting to the Kansas City Company from the carelessness of the fireman of the St. Paul train, of which he had no knowledge, and to which he did not assent.

Nor do the facts that the engineer and fireman were fellow servants of the St. Paul Company, and that the negligence of the latter contributed to the injury which the Kansas City Company caused, exempt the latter from liability to the engineer. The fellow-servant doctrine, where it is not abolished or modified by statute, exempts the common master only, from damages caused by the negligence of the fellow servant. That the negligence of the master or of the fellow servant contributed to an injury, the proximate cause of which was the negligence of a stranger, is no defense to the latter. One is liable for an injury caused by the concurring negligence of himself and another to the same extent as for one caused entirely by his own negligence. Railway Co. v. Sutton, 11 C. C. A. 251, 63 Fed. 394, 395; Railway Co. v. Cummings, 106 U. S. 700, 702, 1 Sup. Ct. 493; Railway Co. v. Callaghan, 6 C. C. A. 205, 206, 56 Fed. 988; Harriman v. Railway Co., 45 Ohio St. 11, 32, 12 N. E. 451; Lane v. Atlantic Works, 111 Mass. 136; Griffin v. Railroad Co., 148 Mass. 143, 145, 19 N. E. 166; Cayzer v. Taylor, 10 Gray, 274; Elmer v. Locke, 135 Mass. 575; Booth v. Railroad Co., 73 N. Y. 38; Cone v. Railroad Co., 81 N. Y. 206; Coppins v. Railroad Co., 122 N. Y. 557, 25 N. E. 915; Gray v. Railroad Co., 24 Fed. 168; Railroad Co. v. Young, 1 C. C. A. 428, 49 Fed. 723; Railway Co. v. Mackney (Tex. Sup.) 18 S. W. 949.

The views already expressed dispose of the tenth and eleventh assignments of error, which complain of the refusal of the court to charge that the negligence of the fireman on the St. Paul train in watching for and giving notice of the approach of the Kansas City train after it had stopped, if that negligence contributed to the injury, would prevent a recovery in this action.

It is assigned as error that the court below refused to give the following charge:

"That the engineer in charge of the defendant's train had the right to presume that the ordinary signals of the approach of the Milwaukee train would

be given, and that the headlight of the locomotive would be lighted; and if you believe from the evidence that the headlight on the Milwaukee locomotive was not lighted at the time of approaching the stop board, and that by reason thereof the engineer in charge of defendant's train was not warned of its approach, then the latter had a right, after giving the usual signal, to proceed on his way toward the crossing."

This proposed instruction does not correctly state the law. The engineer of the defendant's train had no right to proceed on his way towards the crossing, although he was not warned of the approach of the St. Paul train by the headlight, if, by the exercise of ordinary care, he would have been warned of the approach of that train without the headlight; and there was very persuasive evidence in the fact that a brakeman and passenger on his train were warned of its approach, that, if he had exercised ordinary care, he would have seen it, whether the headlight was burning or not.

It is assigned as error that the court refused to charge as follows:

"That if the jury believe from the evidence that the headlight on the Milwaukee locomotive was not properly lighted, so as to warn the employés in charge of the defendant's train of its approach to the crossing, then the attempt to make the crossing on the part of the deceased, under those circumstances, was such negligence as would bar the plaintiff's right of recovery in this action."

The proposed instruction was rightly refused. It entirely ignores the element of causation. If the headlight on the St. Paul engine was not properly lighted, and if the fact that it was not lighted contributed to cause the injury, then the attempt to make the crossing was negligence on the part of the engineer of that locomotive; but if it was not properly lighted, and if the negligence of the engineer on the Kansas City train was such that the jury believed that he would have driven his engine upon the crossing in just the same way if it had been lighted, then the absence of a headlight would not bar the plaintiff's recovery in this action. It is negligence contributing to the injury, and not negligence that does not contribute to it, that prevents such a recovery.

No error is assigned to the charge actually given by the court in this case. It was full, clear, explicit, and correctly stated the law. Numerous requests for instructions were presented to the court, and errors are assigned because the court refused to give these requests in the language of counsel. We have carefully and patiently examined them all, and compared them with the charge actually given, and are satisfied that, so far as they correctly state the law, they are substantially contained in the charge of the court. Accordingly the errors assigned for these refusals cannot be sustained. It is not error to refuse to give requests of counsel where the rules of law embodied in them are correctly laid down in the general charge of the court. Railway Co. v. Jarvi, 3 C. C. A. 433, 439, 53 Fed. 65; Railway Co. v. Washington, 4 U. S. App. 129, 1 C. C. A. 286, and 49 Fed. 347, 353.

A single error is assigned to the ruling of the court below in the introduction of evidence. It is that a civil engineer who had made a survey and a map of the intersection of these roads at the place

of the accident was permitted to testify that, if the headlight of the St. Paul engine was lighted, and was at any point on the St. Paul road within 400 feet of the crossing, it would be visible at all points between the stop board on the Kansas City road and the crossing. This engineer had been upon the ground and knew that there was no obstruction to the vision between these points. We can conceive of no reason why the evidence was not competent and material. The judgment below must be affirmed, and it is so ordered.