TIMOTHY DRISCOLL vs. BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   October 20, 1915. — April 11, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence*, Street railway, In use of highway, Proximate cause. *Proximate Cause.*
*Boston*, Street traffic regulations. *Words*, "Right of way."

In an action against a corporation operating a street railway in Boston for personal
injuries sustained by reason of the plaintiff being thrown to the ground from the
seat of a wagon in which he was driving when the wagon was struck by a car of
the defendant, there was evidence that the plaintiff was driving four heavy horses
attached to a wagon about twenty-five feet long, called a caravan, the whole
length of horses and wagon being fifty-five feet, that he drove out from a
private way, called Union Wharf, into Commercial Street, intending to turn
to the left and for that purpose to cross the street, that, as soon as he could see
past a building on his left, he saw a car of the defendant approaching from the
left on the nearer track at the rate of about ten miles an hour, which was the
ordinary speed for cars in that neighborhood, that the car was then from one
hundred and fifty to two hundred feet distant, that when he got into Commercial
Street his pole horses had got upon the track, the leaders being ahead of them,
that he then looked again and saw that the car was within fifty or sixty feet from
him, that his horses were walking, going at the rate of about three miles an hour,
that he supposed that the motorman would retard the car a little so as to let
the whole of the plaintiff's wagon get over the track, that therefore he permitted
his horses to continue at a walk and the car struck "just within the rear wheel
of the wagon, the hind end of the wagon," that the wagon "was shoved" about
fifteen feet and the plaintiff was thrown out and injured.   There was put in evi-
dence a street regulation of the city of Boston providing that, with certain ex-
ceptions, "street cars shall have the right of way between cross streets over all
other vehicles; and the driver of any vehicle proceeding on the track in front
of a street car shall immediately turn out on a signal by the motorman or conduc-
tor of the car."   *Held*,

1. That there was evidence that the plaintiff was in the exercise of due care.
2. That, although the private way was not a cross street and under the street reg-
   ulation the defendant's car had the right of way, such right was one of prece-
   dence and not of exclusive enjoyment, and that, whether it was reasonably
   practicable for the plaintiff to drive out from the private way in any other manner
   than by crossing the defendant's tracks and thus whether the regulation was
   violated, were questions of fact.
3. That, if the jury should find that the regulation was violated, it then would be a
   question of fact whether such violation was a proximate cause of the plaintiff's
   injury.
4. That it could not be ruled as matter of law that the defendant's motorman
   was not negligent, as it might have been found that, although the rate of speed
   of the car was not excessive, the motorman by slightly checking the progress of

the car might have avoided the accident, and, although the car had the right of way, this did not give the motorman a right to run into the plaintiff's wagon if this reasonably could be avoided, so that the question of the negligence of the motorman also was for the jury.

TORT by the driver of a four horse caravan for personal injuries sustained by reason of being thrown from his seat to the ground by being run into by a street railway car of the defendant on Commercial Street in Boston on September 17, 1913. Writ dated October 23, 1913.

In the Superior Court the case was tried before *Lawton,* J. At the close of the plaintiff's evidence, which is described in the opinion and a footnote, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*F. J. Daggett,* (*P. Mansfield* with him,) for the plaintiff.

*W. G. Thompson,* (*G. E. Mears* with him,) for the defendant.

RUGG, C. J. The material testimony is not in dispute. The plaintiff drove a long wagon called a caravan, drawn by four heavy horses, two on the pole and "two leaders," from a comparatively narrow private way, called Union Wharf, straight out into Commercial Street in Boston, intending to cross the street and turn to the left. As he drove sitting on the right of the seat, his view was obstructed to his left until he passed a building. His "leaders" were on the car tracks of the defendant before the plaintiff could see anything in that direction. The distance from the noses of the leader horses to the extreme rear end of the wagon was fifty-five feet. The wagon was about twenty-five feet long. The rate of speed of the horses was about three miles an hour. There was a car coming from his left on the track nearest to the curb as he drove out, at a uniform rate of about ten miles an hour, which was the ordinary speed for cars in that neighborhood. This car struck "just within the rear wheel of the wagon, the hind end of the wagon," and "it was shoved" about fifteen feet. The plaintiff testified: "Driving out, I came to the end of this building and I looked both ways. I see a car coming within one hundred and fifty to two hundred feet of me. I kept going along. When I got out, my pole horses got on to the track. I looked again and the car was within fifty or sixty feet of me. . . . Walking slow. . . . My horses were walking." "Q. And you supposed the motorman, being one hundred and fifty feet back, and going as you

say at his usual speed, would, if it was necessary, slow up a little to let you by? . . . A.   Yes. — Q. . . . That was the reason why you didn't speed up your horses a little, wasn't it? A. Yes, sir. — Q. . . . You felt that you had a long wagon there, — A. Yes, sir — Q.—and if you got your horses on to the track in time so that he could, by slowing up a little, let you get the whole wagon over, it was his duty to do it? A. Yes, sir.—Q. That was your idea? A. Yes, sir. . . . — Q. Take it as you were driving out, straight across Commercial Street with that team and those horses then. Can you speed them up quickly or not? A. Yes, sir. — Q. How quickly? A. A short distance. About five miles an hour, I should think."

1. The question of the plaintiff's due care, in the opinion of a majority of the court, was for the jury. Such a long and cumbersome vehicle as that driven by the plaintiff is not an outlaw. It is entitled to the rights of a traveller on the public ways. It is matter of common knowledge that use of such wagons is frequent. They must often come out from between buildings. Whether under all the conditions confronting him the plaintiff reasonably could have urged his horses forward at a faster pace in time to have avoided the collision was a question of fact. The case on this branch is governed by *Creavin* v. *Newton Street Railway*, 176 Mass. 529, *Farris* v. *Boston Elevated Railway*, 210 Mass. 585, and cases of that class. It is not a case where the plaintiff trusted entirely to the care of the motorman, as in *Lawrence* v. *Fitchburg & Leominster Street Railway*, 201 Mass. 489. The jury may have felt that, in view of all the circumstances, including the distance of the car away when first seen by the plaintiff, he was acting as a reasonably prudent man ought to act in trying to get upon the side of the street where the law of the road required him to be.

2. There were introduced in evidence two sections of the street traffic regulations of Boston.* The plaintiff knew of these regula-

---

* The first two sections of article 3 of the Street Traffic Regulations and Rules for Driving of the City of Boston are as follows: "Section 1. Police, Fire Department, emergency repair wagons, United States mail vehicles and ambulances shall have the right of way in any street and through any procession.

"Section 2. Subject to Section 1 of this article, street cars shall have the right of way between cross streets over all other vehicles; and the driver of any vehicle proceeding on the track in front of a street car shall immediately turn out on a signal by the motorman or conductor of the car."

tions. It strenuously is urged that the plaintiff violated § 2, that this violation was a contributing proximate cause of his injury, and hence that he cannot recover.

This was a place to which the regulation applied. The private way out of which the plaintiff was driving manifestly was not a cross street. It was not even an intersecting street, for it was not a street at all. Therefore the cars of the defendant had the right of way.

The definition of "right of way" in the regulation, put forward by the defendant, may be accepted in substance though with slight modification as meaning the right not to be hindered, obstructed or delayed by persons who reasonably can avoid hindering, obstructing or delaying the one who has by law precedence in using the right of way.

But it could not rightly have been ruled as matter of law that the plaintiff violated this regulation and that this illegal act was a contributing proximate cause of his injury. Whether the regulation was violated was a question of fact. It cannot be presumed that it was the purpose of the regulation to prohibit the traffic of vehicles such as that driven by the plaintiff to Union Wharf and other similar places. That would not naturally have been done by indirection, but expressly. The right of way accorded to the street car by the regulation was a right of precedence, not of exclusive enjoyment. Other travellers may use the portion of the street where the tracks are laid, subject to that precedence. Whether it was reasonably practicable to drive out in any other way than by crossing the tracks of the defendant, and whether thus the regulation was violated, were questions of fact.

3. It also was a question of fact whether the violation of the regulation was a proximate cause of the plaintiff's injury, or only an attendant circumstance. In this respect the case is governed by *Newcomb* v. *Boston Protective Department*, 146 Mass. 596, *Moran* v. *Dickinson*, 204 Mass. 559, and *Bourne* v. *Whitman*, 209 Mass. 155, where the controlling principles of law have been expounded by eminent justices. They need not be repeated.

4. It could not have been ruled as matter of law that the motorman of the defendant was not negligent. It might have been found that the wagon was almost out of the path of the car and that, although the speed of the car was not excessive, a slight

checking of its progress might have avoided the accident.  *Jeddrey*
v. *Boston & Northern Street Railway*, 198 Mass. 232.  *Callahan*
v. *Boston Elevated Railway*, 205 Mass. 422.  Even though the street
car had the right of way, that might have been found not to justify
a running into a vehicle like that of the plaintiff under the cir-
cumstances here disclosed.  The precedence in the use of the street
afforded to the street car by the regulation did not warrant the
motorman in running into a vehicle on the track if this could rea-
sonably be avoided, nor in failing to keep a lookout for other travel-
lers.  See *Chicago, St. Paul & Kansas City Railway* v. *Chambers*,
15 C. C. A. 327;  *New York & Greenwood Lake Railway* v. *New
Jersey Electric Railway*, 31 Vroom, 52, 59;  *Chicago & Alton
Railroad* v. *Rockford, Rock Island & St. Louis Railroad*, 72 Ill.
34;  *Pratt* v. *Chicago, Milwaukee & St. Paul Railway*, 38 Minn.
455.

*Exceptions sustained.*