## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

WILLIAM BOMBARD *vs.* WORCESTER CONSOLIDATED STREET
RAILWAY COMPANY.

Worcester. September 29, 1919. — October 10, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Negligence,* Contributory, Street railway.

At the trial of an action against a street railway company for personal injuries
received by the plaintiff when he was riding on the seat with and at the left
side of the driver of a trucking sled which was run into by a street car of the
defendant, there was evidence tending to show that previous to the accident
the sled and the street car had been going in the same direction, that the tracks
of the street railway were in a reserved space in the middle of a highway, that
at the time of the accident the sled was crossing the reserved space from that
part of the highway at the right hand side of that space to the part on the
left hand side, that, previous to the sled starting to cross, the plaintiff had
seen the street car, which then was seventy-five or one hundred yards distant,
and that he had held out his hand continuously to indicate that the sled was
turning to cross the track. The plaintiff also testified that "we had plenty of
time." *Held,* that a finding was warranted that the plaintiff was in the exercise
of due care.

At the trial above described there also was evidence that the motorman of the
street car did not do anything to avoid the collision except to ring the gong on
the car, although he saw the sled being driven toward the track and although
a slight checking of speed on his part might have prevented the accident. *Held,*
that a finding was warranted that the motorman was negligent in not retarding
the speed of the car to avoid the accident.

TORT for personal injuries received by the plaintiff when he was riding beside the driver of a sled which was run into by an electric street car of the defendant. Writ dated April 30, 1918.

In the Superior Court the action was tried before *Hammond*, J. The material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered for the defendant. The motion was denied and the defendant alleged an exception. The jury found for the plaintiff in the sum of $255.

After the return of the verdict and before the recording thereof, the trial judge under St. 1915, c. 185, reserved leave with the assent of the jury to enter a verdict for the defendant, if, upon the exceptions taken or the question of law reserved, this court should decide that a verdict for the defendant ought to have been ordered.

The case was submitted on briefs.

*C. C. Milton, J. M. Thayer & F. H. Dewey*, for the defendant.
*C. F. Campbell & J. C. Donnelly*, for the plaintiff.

JENNEY, J. In this action, the plaintiff claims that he is entitled to recover damages for injuries received by him while travelling on Shrewsbury Street in Worcester by a collision of a sled with an electric car of the defendant. The only question is whether the action of the trial judge in refusing to order a verdict for the defendant was erroneous. The sled was described by the plaintiff as "a low down sled, known as a 'bob sled,' driven by one horse," and further described by him as "an open sled; the runners were wooden runners with a steel tire, and the sleigh was all open where the plaintiff sat. The body of the sleigh was raised a little above the runners; the sleigh was not closed on either side — it was all open; there was a regular seat." The accident happened in December, 1917, when the sleighing was good.

Taking the evidence in the aspect most favorable to the plaintiff, the jury were justified in finding the following facts: The plaintiff was employed as a "striker" by Davis Brothers, who were engaged in the furniture and trucking business. His work included that of helping teamsters in loading and unloading. He did not drive. A fellow employee by the name of Marshall was driving the sled at the time of the accident and the plaintiff then was sitting on Marshall's left. Marshall had been engaged in driving for twenty-eight years.

Shrewsbury Street runs east and west. The double track of the defendant was in the centre of the street, in a reserved space separated by a curb from travelled ways on its sides. There were crossovers at various places for the purpose of enabling travellers to cross from one side of the street to the other. The travelled way on the southerly side was "extensively used by teams both going toward the east and west." The travelled way on the northerly side was used exclusively by automobiles.

After the delivery of the load of furniture, Marshall drove westerly on the southerly travelled way until he came to a point where the street "was blocked where they were putting in a track, and then we had to go across the tracks to the right hand side" of the street; proceeded westerly on that side of the street to the end of the section which was "blocked"; then started to return to the southerly side. The accident happened while the driver was attempting to so cross. At this point there was a crossover designed and used for passing over the reserved space.

The plaintiff testified: "There was nothing to interfere with our crossing over; I looked to see; I saw an electric car before I crossed over and at that time it was around the ball ground by the grandstand; that would be toward the lake, which would be in the general direction from which I was coming. The electric car was then at the bleachers. I gave the signal that we were going to cross — I put out my left hand; I was on the left side of the team and Mr. Marshall was on the right hand side. . . . The horse was walking as we approached the scene of the accident. As we were crossing where the accident happened the horse was walking; it was a slow horse; as we went across the crossing the car run right ahead and right into the rear end of the sleigh; the back end of the sleigh was hit; it knocked me out into the street. . . . At some time I looked back and saw a car coming down; at that time the car was up to the bleachers — the grandstand — the other side of the grandstand; the car was then moving; I don't know whether there was a white pole near there, but the car was moving and I put out my hand; I kept my hand out until the car hit us; I mean to tell the jury that I kept my hand out, and I didn't see the car again; from the time I first saw the electric car, I didn't see it again, I know that the car hit me; I saw it when I first put my hand out but I didn't see it until it hit

me." He further testified that the driver was turning around to go across when he saw the car; that there was nothing to obscure the view; that the car was quite a way off and that "we had plenty of time;" that "when we were on the track and I had my hand up, the car was about around the bleachers, about four car lengths" away. He later testified that the car was "seventy-five or one hundred yards" away when we "started to go across . . . just going to turn to go on." The car and the sled were going in the same direction.

Marshall testified that the sled was on the extreme side of the northerly travelled way when he started to turn to the southerly travelled way; that he looked back and saw a car before he started to turn; that when he saw the car the second time, the horse was just going on the track and the car was about four lengths away and that he did not stop the horse.

It cannot be said as matter of law that the plaintiff did not exercise due care. He was not the driver and it was a rear end collision. From his testimony, the jury could find that he saw the car as soon as there was any necessity of observation; that he thought there was sufficient time to pass over the tracks before the car came to the crossing and that this belief was one which a reasonably prudent man might have entertained. The horse was driven, or might have been found to have been driven, in a reasonable manner and not suddenly upon the tracks in front of an approaching car. The plaintiff, while obliged to exercise reasonable care, had the right to rely to some extent on the presumption that the motorman would exercise some care to avoid a collision at a place where the crossing of tracks was proper. *Scanlon* v. *Berkshire Street Railway*, 215 Mass. 554. *Gagnon* v. *Worcester Consolidated Street Railway*, 231 Mass. 160.

The question of the negligence of the motorman was also for the jury. Although there was no evidence justifying a finding of negligence because of the speed of the car, there was evidence that the motorman did not slow down or do anything to avoid the collision except to ring the bell on the car, although he saw the sled driven toward the track and although a slight checking of speed might have prevented the accident. The jury had a right to find that due care required the motorman to slow down if necessary to avoid hitting the sled. *Driscoll* v. *Boston Elevated*

*Railway,* 223 Mass. 533.    *Jeddrey* v. *Boston & Northern Street Railway,* 198 Mass. 232.    *Scanlon* v. *Berkshire Street Railway, supra.*

*Exceptions overruled.*