[L. A. No. 1230.   In Bank.—April 4, 1905.]

EDITH Z. POWLEY and WILLIAM P. POWLEY, Minors, by their Guardian *ad litem,* Respondents, v. ANTON SWENSEN, and J. J. HILL, Copartners, etc., Appellants.

ACTION FOR DEATH—EVIDENCE—SUPPORT OF MINORS.—In an action by minors for the death of their father, alleged to have been caused by the negligence of the defendants, by whom the deceased was employed, in failing to provide him a safe place in which to work, evidence was admissible to show to what extent the plaintiffs were supported by their father's earnings.

ID.—CAVING OF EARTH INTO CITY TUNNEL—CONSTRUCTION OF RETAINING-WALL—PRESUMPTION—OFFICIAL DUTY.—Where it appeared that the deceased lost his life by the caving and sliding of earth from a hill above into the mouth of a city tunnel, in which he was working, which was not properly braced against it by defendants as contractors, and that the retaining-wall of the tunnel was sufficient to withstand the pressure without injury, and that it had been constructed under the supervision of an engineer of the city, and

that plans and specifications had been prepared in his office, it is to be presumed that the engineer had done his official duty, and that the retaining-wall was built according to such plans and specifications.

ID.—TESTIMONY OF CITY ENGINEER—IMPROPER MOTION TO STRIKE OUT. —Where the city engineer had given clearly admissible testimony for the plaintiffs upon other matters, a motion by defendants to strike out all of his testimony on the ground that it was not shown that the retaining-wall was built according to the plans and specifications in his office, was properly denied, as being too general, and not directed with precision to any objectionable testimony, if there were such, regardless of whether the point urged was or was not tenable or material.

ID.—EVIDENCE—REASON FOR PAYING DECEASED EXTRA WAGES.—Where the duties of the deceased as foreman of the work, and the fact that he had received extra wages, were properly proved, evidence was not admissible to state the reason for paying him the extra wages for the purpose of showing that he had extra responsibility.

ID.—EMPLOYMENT OF DECEASED AS FOREMAN—REFUSAL OF AMENDMENT TO ANSWER—HARMLESS RULING.—Where the original answer alleges that deceased was employed as foreman to supervise the work of excavation, to direct the laborers, and superintend the placing of the timber where the accident occurred, and was sufficent to admit full proof of his duties, and evidence was given that he had charge of the whole tunnel, the defendants were not prejudiced by a refusal of leave to amend the answer by averring that he had entire charge of the timbering in and about the tunnel.

ID.—SUFFICIENCY OF EVIDENCE—NONSUIT—INSTRUCTION AS TO VERDICT. —Where the evidence and admissions of the pleadings were sufficient to justify the overruling of a motion for a nonsuit, and the subsequent evidence supplied any defects therein, and the evidence for the defendants did not destroy the effect of the plaintiffs' evidence, the court properly refused to instruct the jury to render a verdict for the defendants.

ID.—VERDICT NOT AGAINST LAW—CONFLICTING EVIDENCE.—A verdict cannot be considered against law where there is conflicting evidence as to material facts upon which the jury had the right to pass.

ID.—CONSTRUCTION OF INSTRUCTIONS—PROVINCE OF JURY—DEFENSES— DUTY OF MASTER—RIGHT OF SERVANT.—Where the court fully instructed the jury as to defenses set up by the answer, instructions concerning the duty of the master to use ordinary care, to furnish the servant with a safe place in which to work, and to protect the servant against accident, and as to the right of the servant to rely upon the master therefor, and to assume that the master has performed his duty in that regard, do not take from the jury the matters of defense set up, or invade the province of the jury.

ID.—JOINT CONTRIBUTION TO INJURY—DEFENSE—HARMLESS INSTRUCTION.—A correct instruction to the effect that where two or more

persons jointly contribute to the injury the injured party may sue
one or all is harmless, even if there were no joint liability, where
a special defense was interposed and sought to be proved by the
contractors defendant that the city was liable for the injury.

ID.—PAPERS SUBMITTED TO JURY—EXHIBITS AND PLEADINGS—ERROR NOT
PREJUDICIAL.—The court has discretion to submit to the jury exhib-
its and documents which have been read in evidence. It is not a
safe or proper practice to submit the pleadings to the jury; but the
error in so doing is not ground for reversal where no prejudice or
injury appears to have been caused thereby.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.
M. T. Allen, Judge.

The facts are stated in the opinion.

Herbert Cutler Brown, for Appellants.

W. C. Petchner, and Anderson & Anderson, for Respond-
ents.

CHIPMAN, C.—Action for damages resulting from the
death of plaintiffs' father, W. F. Powley, who, it is alleged,
lost his life while in the employment of defendants through
their fault. The cause was tried with a jury, and plaintiffs
had the verdict, upon which the court entered judgment.
Defendants appeal from the judgment and from the order
denying their motion for a new trial, and bring the appeal
here on bill of exceptions.

Defendants were contractors who had undertaken to con-
struct a tunnel in the city of Los Angeles through a hill lying
between Hill and Figueroa streets, being a projection of
Third Street, and known as Third-Street Tunnel. Work
was begun on both sides of the hill extending toward the
center. The accident in question occurred within and near
the westerly end or section of the tunnel. The plans for the
tunnel included the construction of a strong retaining-wall
against the face of the hill, whose purpose was to hold the
earth in place and prevent it coming down into the street
at the end of the tunnel. This retaining-wall extended en-
tirely across Third Street, and to a height of about forty-three
feet, and, to give it greater resistance, was built so as to lean

slightly toward the hill. An opening through this wall formed the portal or entrance to the tunnel. It is in evidence that when this wall was completed it rested against the hill on the south side of Third Street and stood out from the hill seven or eight feet on the north side and about four feet or four and one half feet at the top of the tunnel and diminishing in width to some twenty inches at the floor of the tunnel— making a wedge-shaped opening between the wall and the hill. The mixing of cement for the arch brickwork in the tunnel was done inside of this portal. Some trouble had arisen from earth falling down from the hillside to the place where the cement was being mixed, and to prevent this boards and timbers of different sizes had been placed against the wall and the hillside to catch this loosening earth, but not for the purpose and not at all adequate in strength to hold the earth in place should a slide from the hill occur toward the wall. These boards and timbers were close enough together to accomplish the purpose intended of catching loose pieces of falling earth, but did not entirely shut out the light from above. The width of the tunnel in the clear was forty-two feet, and at the time of the accident had been excavated toward the center of the hill some distance, one hundred feet of which had received its brick roofing, leaving next to the portal about twenty feet of an undisturbed core and about twelve feet of tunnel, not yet completed, next to the completed portion. The work in the tunnel was carried on by means of a drift on each side of this core, and when the accident occurred the work on the tunnel was, as we understand the evidence, being done at the westerly end through this core toward the portal. Deceased was employed as foreman of the work in the tunnel, and was an experienced man in tunnel and timbering work in mines. There is evidence that he had nothing to do with building the portal or putting in the boards above referred to, and did not commence work until about two months after the retaining-wall was built. His was the night shift, but, as it happened, he had taken the place of the other foreman on the Sunday of the accident because this man declined to work that day. It appears that there was a city sewer crossing Third Street above the tunnel and back of the portal fifty or sixty feet, from which sewage water escaped into the soil and penetrated the earth

above the tunnel, into which latter the water seeped to some
extent, which facts were known to defendants and to deceased.
This water-saturated earth rested on or was intermixed with
layers of shale, having a sixty-degree pitch toward the portal,
and on the day of the accident a body of earth slipped from
the westerly side of this sewer and moved toward the portal,
and there was evidence that by its momentum and weight it
crowded the earth against the portal and downwards along
its inner side, and carrying with it the timbers and material
at the tunnel where the deceased was working, thus causing
his and the death of two others. The retaining-wall stood the
shock and weight without injury to it, and there is evidence
tending to show that if this open space between the hill and
the wall had been filled in with earth, or if sufficient bracing
timbers of suitable strength had been placed against the
wall and hill it would have prevented the earth above the
tunnel from moving and acquiring additional force by its
momentum, and the timbering where the men were working
would not have given way, and the accident would not have
happened. There is evidence also that inside the tunnel the
completed work some distance back from where the men were
working did not collapse, and that no timbering or bracing
inside the tunnel *where the accident happened* would have
withstood the pressure.

The complaint alleged that the accident occurred "by the
neglect and failure of defendants to exercise ordinary care
to properly brace and strengthen said tunnel at the point
where the same caved," and " . . . to take proper or ordinary
precautions in prosecuting said work as to render said west-
erly end of said tunnel safe, and thereby and by such negli-
gence defendants failed to furnish said W. F. Powley with
a safe place in which to work"; that "the said tunnel, at
the point where the same caved in, as aforesaid, and the
work therein, were of a dangerous character, and defendants
did not exercise ordinary care and diligence to ascertain and
apprehend the dangers thereof; and defendants negligently
and carelessly failed to take measures for the protection of
said Powley while he was working within said tunnel, as
aforesaid, commensurate with the dangerous character of said
tunnel, and the work therein."

In addition to specific denials of the averments of the veri-

fied complaint, defendants set up three special defenses, in effect: 1. That Powley was employed as foreman "to direct and supervise the work of excavation, direct the laborers engaged upon such work, and to superintend and direct the placing of timbers and supports at the places, and in that portion of the tunnel where the accident occurred," and he was charged with the duty of providing for his own safety as well as that of other employees, and in securing to them a safe place to work, and that the accident was due to his own violation of duties expressly imposed upon him, and that his death was caused proximately by his own negligence; 2. That all said workmen, including plaintiffs' intestate, were engaged in a common employment, and if he was injured it occurred through the negligence of fellow-servants of deceased; and 3. That the work, including the construction of the retaining-wall, was done in accordance with plans made by the city of Los Angeles and under the direction of its proper officers; that in the city sewer above referred to there was a manhole through which the city flushed said sewer, and that a large volume of water was carried into said sewer to flush the same, causing the sewer to break and said waters to impregnate the earth, and thus causing it to slide upon the strata of shale which it is alleged interlaid the earth at an angle toward said portal of sixty degrees; that said wall was ordered to be constructed for the purpose of preventing just such a slide of earth as happened, but that said wall was imperfectly constructed for the purposes for which it was intended. It is alleged, however, that defendants constructed the same under the directions of the city engineer, and relied wholly upon such directions and upon his skill and knowledge, and that the accident was the result of a combination of circumstances over which defendants had no control, and without their fault.

The errors complained of will be noticed in the order presented in defendants' brief.

1. Mrs. Colburn, mother and guardian ad litem of plaintiffs, was asked the question: "Did you know what was his [Powley's] average monthly contribution to their [the plaintiffs'] support at the time of his death?" to which she answered: "Thirty a month." Counsel thereupon objected, as irrelevant and incompetent. Waiving the rule of practice which

would have required a motion to strike out the answer where made without objection, we think it was competent to learn from the witness if she knew to what extent plaintiffs were supported from their father's earnings, which was in effect the answer. It appeared elsewhere that he earned about three dollars per day, and no other source of income was attempted to be shown.

2. At the close of plaintiffs' evidence defendants moved to strike out all the testimony of City Engineer Dockweiler, on the ground that it had not been shown that the retaining-wall was built in accordance with the plans and specifications prepared in his office. The court denied the motion. It was in evidence that the plans and specifications for this wall were prepared in the city engineer's office, and that it was erected under the direct supervision of an engineer officer of the city in the performance of official duty. Nothing at this point in the case tended to show that this wall was not constructed in accordance with plans and specifications, and presumably it was so constructed. In fact the wall stood the pressure, and was not defective save that it was not built against the earth. Whether built in accordance with the original plans seems not to be material, as the lower court held. But the ruling was correct on other grounds. Witness Dockweiler had testified to the condition and stratification of the earth above the tunnel; to the pitch of the shale toward the wall; to the loosening effect of water permeating this body of earth and shale; to the additional pressure and force .of a moving body of earth, and other facts. The motion was too general, for some of the testimony was clearly admissible regardless of the point made by defendants. The motion should have been directed with precision to the objectionable testimony if there was such. (*Hellman* v. *McWilliams,* 70 Cal. 449.)

3. When on the witness-stand defendant Hill was asked why he paid Powley three dollars per day instead of $1.50 or $1.75, to which question plaintiffs objected. The court sustained the objection. The purpose of the question, as claimed by defendants, was to show that because Powley received more pay than other men it tended to show that he had "extra responsibility." The witness had testified to the fact that Powley was paid three dollars, and other men $1.50 and

$1.75 per day. It was competent for the witness to testify to Powley's duties in addition to showing this difference in pay, and the witness did testify as to Powley's duties. The reason why he was paid higher wages than other men would not necessarily tend to fix the extent of his responsibility.

4. Towards the close of the trial defendants asked leave to amend their answer "to the effect that Mr. Powley had entire charge of the timbering in and about the tunnel." Defendants in their answer allege that Powley was employed as foreman to supervise the work of excavation, direct the laborers on such work, and to superintend the placing of timbers at that part of the tunnel where the accident occurred. The issues presented in the pleadings were quite sufficient to admit of full proof as to what duties devolved upon Powley and what instructions were given him. Defendant Hill testified on the subject; and although some questions put to him by counsel for defendants after the refusal of the court to allow the amendment were objected to and refused, and exceptions taken, they were, owing to their form, within the discretion of the court to allow or refuse. These questions were in leading form and were intended to bring out the scope of Powley's duties. The witness, however, had full opportunity to state the facts as to Powley's employment, as did other witnesses, and, among other answers, defendant Hill stated that he gave Powley no instructions about the tunnel, and that Powley "was to take care of the whole tunnel." Defendants were not prejudiced by the ruling of the court, if error be conceded.

5. A motion for nonsuit was made at the close of plaintiffs' evidence, and it is urged should have been granted,—1. Because there was then no direct proof of Powley's death; 2. That although there was evidence tending to show that the space behind the retaining-wall was an element of danger, there is no evidence going to show that deceased was killed; 3. That the evidence showed that the moving cause of the accident was the leakage of the sewer above the tunnel, but that "there was no testimony tending to show that defendants were responsible for that condition, or that any act of omission of defendants was responsible for the sliding of the earth and its precipitation into the tunnel." The testimony later on in the trial brought out quite fully the facts on these points. We think, however, when the motion was made

there was sufficient shown by the admissions of the pleadings and by the testimony before the jury to justify the court in refusing a nonsuit on the grounds stated.

6. Defendants asked an instruction that the verdict must be for defendants, which the court refused to give. To show that this was error, defendants now present in their brief a review of the entire evidence in the case. As we have already seen, the evidence given in favor of the plaintiffs was sufficient to justify the denial of the motion for a nonsuit. Our attention has not been called to any evidence on behalf of the defendants which has the effect of explaining or modifying the evidence of the plaintiffs, so as to destroy its effect. On the contrary, as stated, the evidence given later tended to supply the defects, such as they were, in the plaintiffs' proof and fully justified the refusal to direct a verdict for the defendants.

If it is urged on the ground that the verdict is against law, the instruction cannot be upheld, because there was conflicting evidence as to material facts which the jury had the right to pass upon. (*O'Connor* v. *Witherby*, 111 Cal. 528.)

7. Appellants object to instructions 4, 5, 6, 8, and 12. It is claimed that one special defense was that Powley was engaged by defendants as a timber man to take entire charge of the timbering, to take such steps as might be necessary to properly protect the work against just such an accident as did occur, and that defendants relied absolutely on his judgment and ability. The objection is that these instructions ignored this issue. Furthermore, that they were given on the theory that it was the duty of defendant to furnish a safe place for the employees to work in. Instructions 4 and 5 are particularly pointed out as open to the objection made. Instruction 4 was: "It is the duty of a master or employer to furnish his servant or employee with a safe place to work, and to make provisions for the safety of his employees or servants as will protect them against the dangers incident to their employment." Further along the court instructed the jury: "You are instructed that Swensen and Hill were not obliged to furnish the said Powley with an absolutely safe place to work in, or to make supports of the tunnel absolutely safe, but they were only required to use ordinary care to protect their employees against accident," etc. We do

not think the jury could have been misled to accept the first instruction above given as meaning that defendants were required to furnish an absolutely safe place in which deceased was to work. In view of all the instructions the jury could not, as reasonable men, have acted upon the supposition that the court had told them the place must have been absolutely safe.

Instruction 5 was as follows: "You are instructed that it is no part of the duty of a servant to inquire into the sufficiency of the provisions made by the master to furnish the servant with a safe place to work. The servant has a right to rely on the master in this regard because it is the master's duty to provide a safe place in which to perform his work, and the servant may justly assume that the master has performed this duty."

It is claimed that, under the pleadings, these were questions for the jury to determine which were taken away from them by the instructions. The jury were fully instructed as to defendants' theory of the case, and they were told that if they should "find from the evidence that Powley was employed to take charge of the timbering of the tunnel and that it was his duty to timber the tunnel and the spaces behind the retaining-wall so that the same should be safe, and secure from accident, and if you find from the evidence that there were materials and means provided for the proper timbering of the tunnel, and if you find from the evidence that the death of Powley would not have occurred but for defects or insufficiency in the timbering put in by him or under his direction, . . . the plaintiffs cannot recover. . . ." Other instructions pointing with equal directness to the defenses set up were given. We cannot see that the court invaded the functions of the jury or took from them any questions which the law committed to them.

8. There was an instruction to the effect that where two or more persons jointly contribute to the injury, the injured party may sue one or all. It is objected that no question of joint liability arose in the case. There was a special defense interposed by defendants tending to fix the responsibility for the injury upon the city of Los Angeles. It is not claimed that the instruction stated an unsound rule of law. In view of the pleadings and the evidence given tending to fix the

responsibility on the corporation, the instruction was not harmful, even if not strictly justified.

9. The court instructed the jury that they might take with them for their "consideration the exhibits introduced in evidence and the pleadings in the case." Objection to this instruction was made by defendants on the ground that "the pleadings were not proper to be considered by the jury in arriving at their verdict." The record shows that the jury took with them the complaint and answer. Section 612 of the Code of Civil Procedure provides: "Upon retiring for deliberation, the jury may take with them all the papers which have been received as evidence in the cause, except depositions or copies of such papers as ought not, in the opinion of the court, to be taken from the person having them in possession; . . ." Section 1137 of the Penal Code is similar in its provisions (although the phraseology differs somewhat), except that the jury "may also take with them the written instructions given."

It does not appear that the pleadings or any part of them were read to the jury as evidence, nor does it appear that the jury read them after retiring. The Colorado code is similar to ours in its provision as to what papers may be given to the jury. In a civil action the defendant requested the court to send the pleadings with the jury on retiring. The claim was that defendant was entitled to have the admissions contained in plaintiffs' complaint before the jury for consideration. The court said: "This assignment is not well taken. It would be a vicious practice indeed to require the pleadings to be sent out in order that the jury might determine as to what matters were admitted therein and what were not. If the pleadings in this case contained any admissioin that the defendant was entitled to have considered by the jury, he should have requested the court to have given an instruction to the jury setting forth the facts so admitted." (*Spaulding* v. *Saltial*, 18 Colo. 86.) In *Drew* v. *Andrews*, 8 Hun, 23, the trial court, over defendants' objection, directed the jury (they being unable to fix the amount of damages) to take the pleadings and return and fix the amount. They returned with an amount greater than claimed, after proven credits were allowed. The court said the pleadings were not evidence, and reversed the judgment. In that case,

CXLVI. Cal.—31

however, manifest injury appeared by the use made of the pleadings. In a Missouri case the practice of sending the pleadings to the jury was said to be of doubtful propriety, but the court said that as the trial courts throughout the state had followed this practice it would not be held prejudicial unless some improper use of the pleadings is shown. (*Bluedorn* v. *Missouri Pac. Ry. Co.*, 121 Mo. 258.) We have not the statute of that state before us. In an Iowa case for personal injury the trial court directed the jury to take the pleadings, for which error was claimed. The court said: "As the jury was correctly instructed as to the issues in the case and no ground for the objection appears, we do not think the record shows the court's action in this regard to be prejudicial." (*McGinty* v. *Keokuk*, 66 Iowa, 725. See *Swanson* v. *Allen*, 108 Iowa, 419, holding apparently otherwise.) The Iowa statute does not differ much from ours. In Texas it seems that the pleadings may go to the jury, and in *International etc. Ry. Co.* v. *Leak*, 64 Tex. 654, the court directed the jury to read the pleadings on retiring, for which error was claimed because the pleadings were declamatory and strong statements of the appellees' case not supported by the evidence, but calculated to inflame the minds of the jury. The court said: "The jury hear the pleadings read in the beginning of the case and take them with them in their retirement and *may* read them again. It is not their duty to do so, and the court below commits an error in charging the jury that it is their duty. It is the duty of the court to evolve from the pleadings and the evidence the issues to be passed upon by the jury. The verdict is the jurors' response to the charge of the court, not to the pleadings. In cases where the pleadings are numerous and voluminous and parts are exorcised by exceptions and the issues are complicated, such a charge as that here complained of might mislead the jury and be ground for reversal. No such result is claimed in this case and the assignment is, therefore, not sustained." In *People* v. *Cochran*, 61 Cal. 548, 551, defendant requested the court to give the jury a diagram used at the trial. It was held that section 1137 of the Penal Code is not mandatory, but that the discretion is with the court to send or not send the papers to the jury; that the diagram was not "used as evidence" in the sense of the statute; and as the jury did not

ask for the diagram, the refusal to send it to the jury did not prejudice the defendant or influence the verdict. See Encyclopedia of Pleading and Practice (vol. 12, p. 598, and cases cited), where it is stated that the practice of allowing the jury to take the pleadings is condemned as of doubtful propriety, but it is stated to be the general rule that where the jury has been correctly instructed as to the issues in the case, there is no error in taking with it by direction of the court the pleadings in the cause. *Granite G. M. Co.* v. *Maginness,* 118 Cal. 131, seems to point to the necessity of introducing the pleadings in evidence before they can be read as such. Our statute provides that the jury may take with them the papers ''received in evidence in the cause,'' with some exceptions. This would seem to imply that papers not received in evidence should not go to the jury on their retirement; and in cases where papers have been read in evidence we think it discretionary with the court whether to allow the jury to take them or not. We do not think the practice of allowing pleadings to be taken to the jury-room a safe one, however the statute may be viewed, for it must be apparent to every practitioner that cases might arise where it would work prejudice if this were permitted. In the present case no prejudice or injury was caused and none is pointed out. The importance and the novelty of the question in our practice must justify the attention here given to it, and it is strongly urged upon trial courts to avoid possible prejudicial error by adhering closely to the statute and not going beyond it.

It is advised that the judgment and order be affirmed.

Gray, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Van Dyke, J., Lorigan, J., Shaw, J., Angellotti, J., Henshaw, J.