[Civ. No. 101.　First Appellate District.—January 18, 1906.]

## ANTONE BIRD, Respondent, v. UTICA GOLD MINING CO. et al., Appellants.

NEGLIGENCE—UNSAFE PLACE FOR MINER—KNOWLEDGE OF MASTER—IGNORANCE OF SERVANT—SUFFICIENCY OF COMPLAINT.—A complaint for injuries to a miner from fall of part of the roof of the mine, alleging that the defendants who employed him in excavating the mine negligently maintained a chamber without necessary supports or props, to prevent the roof and walls from sinking, and that water percolated through the same causing it to become soft, disintegrated and loosened, and thereby rendered it an unsafe and dangerous place to work; and that defendants had full notice and knowledge of all the facts before the injury, and that plaintiff had no knowledge, or means of knowledge, of the unsafe or dangerous condition of said stope or of the causes thereof, states a cause of action. It cannot be said from such allegations that the unsafe condition of the stope was so plainly apparent that the plaintiff must be held to have had knowledge thereof.

ID.—DUTY OF MASTER—RIGHT OF SERVANT—PRESUMPTION.—It is the personal duty of an employer to exercise reasonable care to furnish his employees a reasonably safe place to work; and in the absence of knowledge to the contrary the servant has the right to rely on the presumption that the master has performed his duty.

ID.—KNOWLEDGE OF PERCOLATION OF WATER—PATENT DANGER NOT SHOWN.—If it be assumed that plaintiff must have seen that water percolated through the ground above the chamber, it does not necessarily follow that it was patent to him that the place was unsafe.

ID.—CHARACTER OF WORK—PLEADING—NEGLIGENCE—AFFIRMATIVE DEFENSE.—The complaint is not defective in omitting to allege the character of the work in which the plaintiff was engaged at the time and place of the action. It was sufficient to allege the negligence of the defendant in general terms; and if the character of the work was such that he must be deemed to have assumed the risk of working in a dangerous place, this is a matter of affirmative defense to be shown by the defendant, and need not be negatived by the plaintiff.

ID.—NECESSITY OF TIMBERING—EXPERT EVIDENCE—QUALIFICATION—QUESTION OF FACT—DISCRETION.—The qualification of miners, as expert witnesses, to testify to the conditions rendering timbering necessary in a stope or chamber, was a question of fact to be determined in the first instance by the trial court, and its decision as to their qualification will not be disturbed upon appeal, where it cannot be said that there was a clear abuse of the court's discretion.

ID.—ANSWER NOT RESPONSIVE—ERROR NOT PREJUDICIAL.—An answer not responsive to a question put to the plaintiff should have been stricken out; but the error cannot be held prejudicial when it appears that if the answer had been stricken out, the objection might have been obviated by another question.

ID.—OBJECTIONS TO EXPERT EVIDENCE—CONSTRUCTIONS OF CONDITIONS—SUPPORT BY EVIDENCE.—Objection to the evidence of a miner abundantly qualified as an expert, that it calls for conditions not borne out by the evidence, was properly overruled, where the particular defects were not pointed out and the conditions were susceptible of a construction supported by evidence.

ID.—PHOTOGRAPH OF TIMBERS IN ANOTHER MINE—WITHDRAWAL AFTER OBJECTION OVERRULED.—The exhibition to the jury of a photograph of timbers in another mine, in connection with evidence as to what it represented, admitted without objection, which was withdrawn immediately after an objection to its admission was overruled, did not prejudice the defendants, where they did not ask the court to instruct the jury to disregard any evidence afforded by the picture thus withdrawn.

ID.—SAFETY OF PLACE—RULE AS TO CHANGING CONDITIONS INAPPLICABLE—TIMBERING NOT REQUIRED OF PLAINTIFF.—The exceptional rule that the employer is not required to supply a safe place for his servants to work, if the work of itself constantly changes with the character of the work, or if they are employed in making the place safe, does not apply when the dangerous condition of the place was not the result of changing conditions of work, but of the percolation of water through an untimbered slate roof in a stope used as a passageway by the miners, the timbering of which was not in the scope of plaintiff's employment, but was in the charge of an underground mine manager.

ID.—QUESTIONS FOR JURY—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.—The question whether the defendants were negligent in failing to support the wet rock in the roof of the stope with timbers, and whether the plaintiff was guilty of contributory negligence, or had knowledge of the danger, or whether the facts known to him ought to have brought home to him knowledge of the danger, were questions of fact for the jury to determine.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen & Eells, for Appellants.

Martin Stevens, for Respondent.

HALL, J.—This is an appeal from a judgment in favor of plaintiff for damages received while working in a mine operated by defendants, taken within sixty days from verdict and entry of judgment, and comes before us upon the judgment-roll and a bill of exceptions.

The first point raised by appellant is that: ''The amended complaint does not state facts sufficient to constitute a cause of action against either defendant, inasmuch as the alleged defects causing the accident were patent, not latent.'' It is alleged in the amended complaint that defendants did not furnish, or exercise reasonable care to furnish, their employee, said plaintiff, a safe place in which to perform the work for which he was employed; but, on the contrary, the said defendants, in excavating their said mine, did negligently open and maintain a certain stope or chamber in this, ''that by reason of the percolation of water through the ground immediately above said stope or chamber, the said ground, on and before said day, had become softened, disintegrated and loosened, and it therefore had become, on and before said day, necessary to furnish the said stope or chamber with props, supports, and timbers, in order to prevent the roof and walls thereof from falling.'' This is followed by allegations that defendants negligently failed to supply any props whatever for said chamber, so that said stope became and was an unsafe and dangerous place for men to work in, and that defendants had full notice and knowledge of all of said facts before the day of the accident, and that plaintiff had no notice or knowledge or means of knowledge of the unsafe or dangerous condition of said stope, or of the causes thereof. We cannot say, from the allegations of this complaint, that the unsafe condition of the stope was so plainly apparent that a workman must be held to have had knowledge thereof. It is the personal duty of an employer to exercise reasonable care to furnish his employees a reasonably safe place to work. In the absence of knowledge to the contrary, the servant has the right to rely on the presumption that the master has performed his duty. (*Powley* v. *Swensen,* 146 Cal. 471, [80 Pac. 722].) If we assume in this case that plaintiff must have seen that water percolated through the ground above the chamber, it does not necessarily follow that it was patent to him that the place was unsafe. Similar complaints were held good in *Southwest Im-*

*provement Co.* v. *Andrews,* 86 Va. 270, [9 S. E. 1015] ; *Laporte* v. *Cook,* 20 R. I. 261, [38 Atl. 700] ; *Lewis* v. *City of Montgomery* (Ala.), 16 South. 34.  See, also, 13 Ency. of Pl. & Pr. 904; *Bedford Belt R. Co.* v. *Brown,* 142 Ind. 659, [42 N. E. 359] ; *Mullin* v. *California Horseshoe Co.,* 105 Cal. 77, [38 Pac. 535] ; *Nofsinger* v. *Goldman,* 122 Cal. 609, [55 Pac. 425].)

It is further contended that the complaint is insufficient and defective "in omitting to state the character of work in which respondent was engaged at the time and place of the accident."  In this regard it is contended that plaintiff may have been employed to perform such work as required him to assume the risk incident to the dangerous condition of the chamber, as that he may have been employed in excavating the roof, or in barring down loose rock for the purpose of removing the danger, or in preparing the place for timbering for the same purpose.  It is the general rule that an employer is liable to his servant for negligence in failing to furnish the servant with a safe place to work.  It is sufficient to allege negligence in general terms.  (*Cunningham* v. *Los Angeles etc. Co.,* 115 Cal. 561, [47 Pac. 452], and cases there cited.)  If the particular employment of plaintiff was such that he must be deemed to have assumed the risk of working in a dangerous place, we think this was an affirmative defense to be shown by defendants.  One who relies upon an exception to a general rule must state the facts which bring his case within it.  (*Senter* v. *Davis,* 38 Cal. 450.)  It is the general rule that an employer is liable to his servant for injuries resulting from the employer's negligent failure to provide a safe place to work.  To this there may be exceptions, as where the servant is employed to make the place safe.  A defense founded on such an exception is an affirmative defense, and need not be negatived by the plaintiff.  The court did not err in overruling defendant's demurrer to the amended complaint.

It is insisted by appellants that the court erred in permitting the plaintiff to answer questions as to what circumstances render timbering necessary in a stope or chamber, and what were the conditions in this stope in this mine that made it necessary to timber.  It was objected that the witness had not been shown to be qualified to give an opinion

on the subject embraced in the question. The witness had testified that he had worked for two years off and on in a mine in Arizona where timbering was done to render the mine safe, and for twenty-three days in the mine where the accident occurred. It must be confessed that his qualifications to speak on this subject were not of a high order, and the court would have been justified in refusing to permit him to answer the questions; but we do not think that we can say that the court abused its discretion in allowing the witness to answer. Whether a witness is qualified to testify as an expert is a question of fact to be determined in the first instance by the trial court; and if there be any substantial evidence to support the ruling of the trial court, the appellate court will not interfere. This court will not disturb the ruling of the trial court unless error clearly appears. (*Sowden* v. *Idaho Quartz Min. Co.*, 55 Cal. 443; *Howland* v. *Oakland Cons. Ry. Co.*, 110 Cal. 513, [42 Pac. 983]; *People* v. *McCarthy*, 115 Cal. 255, [46 Pac. 1073].) One of the answers was not responsive to the question asked, and appellants moved to strike it out. This motion should have been granted, but we do not think the error was such as to justify a reversal of the case. Defendants had objected to the question when put, and had obtained the benefit of an exception to the ruling allowing the question. If the answer had been stricken out, another question could properly have been put that would have called forth the testimony contained in the answer. We think this a proper case for invoking the rule contained in section 475 of the Code of Civil Procedure, that this court should not reverse a judgment unless it appear that the complaining party has suffered substantial injury.

Objections were also made to questions to the witness Bouse, examined as an expert by plaintiff. He was abundantly qualified to speak as an expert, and it was proper to permit him to give general testimony as to what conditions make it necessary to timber a mine in order to make it safe. This sort of evidence may properly be given in order to aid the court and jury in arriving at a conclusion as to whether or not timbering or other artificial support was necessary in the mine in question. Plaintiff asked the following question of the witness Bouse: "Suppose there was a stope in the mine of the kind described by you, about one hundred and fifty feet

long and about sixteen feet wide, and the height was such that a man five feet six and one-half inches high, with a miner's lamp in his cap, could not see the roof when looking up, and there was a slate formation in various parts of the stope, and the stope was very moist in certain parts, and the stope had been opened throughout its entire length, breadth and height, was that, in your opinion, a safe place for the men to work in?" Appellants objected to this question on the ground that "it called for conditions which are not borne out by the evidence," and also upon other grounds touching the qualifications of the witness, not necessary to state now, as we already said that the witness had qualified as an expert. In the objection it was not pointed out in what particular or particulars the conditions called for by the question were not borne out by the evidence. We think that, where an objection is made to a question upon this ground, good practice, as well as fairness to the trial court and the opposite party, demand that the particular defects be pointed out; and where this is not done, this court should not be over-diligent in searching for assumptions in the question not sustained by the evidence. But passing this criticism of the objection, as well as some points as to the definiteness of the assumptions contained in the question, which we do not think of sufficient importance to merit discussion, we come to the point principally relied on under this objection that "the stope was not, at the time of the accident, open throughout its entire length, breadth and height." It would seem that it is a sufficient answer to this point to say that the question does not necessarily or at all mean that the stope at the time in question was open throughout its entire length, breadth and height, but only that it "had been opened," which is entirely consistent with the theory now advanced by appellant that the evidence shows that as ore and rock were taken from one part of the stope other parts were filled with the same rock. If there be any doubt as to the meaning of the question, or vagueness in its meaning, in the absence of any special objection on that ground at the time of the ruling made by the trial court, we should interpret the question so as to support the ruling of the court rather than to defeat it. This stope had been open for several years, and at the time of the accident its entire length was over one hundred and fifty feet; one witness putting it

at one hundred and eighty-five feet. While the plaintiff testified that he had been employed filling in various parts of the stope, we are unable to find that it is made to appear that in any part of the stope this filling was so complete as to reach to the roof of the stope and thus support it. It is true that it might be inferred from the evidence that such filling had occurred, but it is equally true, we think, from all the evidence, including the diagrams attached to the record, that it may be that this had not been done. At any rate, it is perfectly clear that the stope described in the question had been opened ''throughout its entire length, breadth and height,'' which is the assumption of the question. The court did not err in overruling the objection to the question under discussion.

It is also insisted that the court erred in permitting plaintiff to exhibit to the jury a certain picture or illustration of timbers in another mine. In this regard the record shows that, after evidence had been given without objection as to what the illustration represented, counsel for plaintiff exhibited the picture to the jury. Counsel for defendants thereupon objected, and though the court overruled the objection, counsel for plaintiff at once said: ''I will withdraw it for the present.'' It was not again offered. Under this state of the record we do not think that defendants are in a position to take advantage of their exception, as the evidence was at once withdrawn. Defendants, if they thought the matter of any consequence, or feared any injury to their cause, should have asked the court to instruct the jury to disregard any evidence afforded by the picture that had been thus withdrawn from the case.

It is urged that the evidence is insufficient to support the verdict, and that the verdict is contrary to the trial court's instructions, which two propositions we think may be most conveniently considered together. The court instructed the jury as follows: ''If you find from the evidence that plaintiff or any of his fellow-servants, at the time of the falling of the rock from the roof or wall of the stope, were engaged in a work that necessarily changed the character for safety of the place in which he was, or they were, working as the work progressed, the hazard of the dangerous place, and the increased hazard of the place made dangerous by the work,

are the ordinary and known dangers of such a place; and by his acceptance of the employment the plaintiff necessarily assumed them as a part of the risk of his employment, and for any injuries sustained in consequence of such risks the plaintiff cannot recover.''

We are cited to various cases in support of the doctrine that the duty by the employer to supply a safe place for his servants to work does not exist where the servants are engaged in a work that in itself constantly changes the character for safety of the place where they are working, or where they are employed in making the place safe.    (*Callan* v. *Bull,* 113 Cal. 593, [45 Pac. 1017] ; *Finalyson* v. *Utica Min. etc. Co.,* 67 Fed. 507, [14 C. C. A. 492] ; *Browne* v. *King et al.,* 100 Fed. 561, [40 C. C. A. 545] ; *City of Minneapolis* v. *Lundin,* 58 Fed. 525, [7 C. C. A. 344] ; *Anderson* v. *Daly Min. Co.,* 16 Utah, 28, [50 Pac. 815] ; *Petaja* v. *Aurora Iron M. Co.,* 106 Mich. 463, [64 N. W. 335, 66 N. W. 951] ; *Mielke* v. *Chicago etc. Ry. Co.,* 103 Wis. 1, [74 Am. St. Rep. 834, 79 N. W. 22] ; *Perry* v. *Rogers,* 157 N. Y. 251, [51 N. E. 1021] ; *Capasso* v. *Woolfolk,* 163 N. Y. 472, [57 N. E. 760].)   In *Callan* v. *Bull,* 113 Cal. 593, [45 Pac. 1017], the plaintiff and his fellow-workmen themselves constructed the structure which gave way and caused the injury.  In *Finalyson* v. *Utica Mining etc. Co.* the workman was prying off a piece of rock preparatory to putting in supports.  In *Browne* v. *King, Anderson* v. *Daly Min. Co.,* and *City of Minneapolis* v. *Lundin,* the workman was injured by ''missed shots,'' charges of powder that had failed to explode at the proper time.  In *Petaja* v. *Aurora Iron M. Co.* the workmen were opening up a drift and, as they progressed, putting in supports.  The accident happened before debris had been cleared away to put in the next set of supports.  In *Mielke* v. *Chicago etc. Ry. Co.* it was held that the workman had full notice of the danger.  In *Perry* v. *Rogers* and in *Capasso* v. *Woolfolk* the workmen were injured while clearing off a ledge immediately after blasting.

The above cases seem to illustrate the scope of the rule as to the exception to the rule of a ''safe place.''  This brings us to an examination of the evidence.  It appears from the record that the stope where the accident occurred had been opened for several years and had never been timbered.  It was upward of one hundred and fifty feet in length, and

varied in width from, say, eight to ten feet to perhaps eighteen feet. There were places where water percolated through the roof, and where the accident happened the roof was composed of slate, and was wet with percolating water, so much so that near by buckets were kept to collect the water for the use of the miners. Testimony was given that this sort of formation was specially liable to fall when not supported, particularly when wet. Plaintiff and the other miners had been in the habit of passing along and under the place where the roof finally fell to get water to drink. It was and had been used as a passageway by them. Just how long the stope had been opened at the point of the accident does not appear, but the place of the accident, as appears from the diagram in the record, was about one-fourth the length of the stope from the nearest end. Blasting was being done, and ore and rock being taken from various parts of the stope. Blasting had been done near the place of the accident shortly before. At the time of the accident plaintiff had gone to the place where the water collected and in returning along the stope a large mass of rock fell from the roof and wall of the stope upon him, breaking his leg and otherwise injuring him.

From the foregoing statement of the evidence it appears to us that the jury might fairly determine that the dangerous condition of the place was not the result of changing conditions produced by the operations of the workmen, but rather was the result of permanent and extraneous causes, to wit, the percolating of water through a slate formation. In this aspect of the evidence the case at bar is quite similar to the case of *Union Pac. Ry. Co.* v. *Jarvi,* 53 Fed. 65, [3 C. C. A. 433], referred to as giving the correct rule in *Finalyson* v. *Utica Min. etc. Co.,* 67 Fed. 507, [14 C. C. A. 492]. In *Union Pacific Co.* v. *Jarvi* a workman was injured by the falling of rock from the roof of a dip stope in a coal mine. The portion of the roof from which the rock fell was wet and of a treacherous character. The court held that it was a question for the jury whether the failure to support or remove such rock was a lack of ordinary care in providing a safe place for the miners to work in. *Powley* v. *Swensen,* 146 Cal. 471, [80 Pac. 722], is also a case that in its essential facts bears a striking analogy to the case at bar. In this latter case Powley was the foreman of a gang of workmen engaged in running

a tunnel.  By reason of the leaking of a sewer a portion of
the earth above the tunnel became softened, and in conse-
quence the tunnel caved in and killed Powley.  A judgment
in favor of his heirs against the contractors building the tun-
nel was sustained.  (See, also, *Kelley* v. *Fourth of July M.
Co.,* 16 Mont. 484, [41 Pac. 273] ; *Elledge* v. *National City etc.
Ry. Co.,* 100 Cal. 282, [38 Am. St. Rep. 290, 34 Pac. 720] ;
and *Hennessey* v. *Boston,* 161 Mass. 502, [37 N. E. 668].)
There was evidence given to the effect that the stope where
the accident occurred was used as a passageway by the work-
men.  In this aspect of the evidence the case is similar to
*Hancock* v. *Keene,* 5 Ind. App. 408, [32 N. E. 329], where the
defendant was held liable for injury to a workman in a mine
caused by the fall of a portion of the untimbered roof of a
passageway.  The points that the evidence is insufficient to
support the verdict, and that the verdict is contrary to the
court's instructions, are not well taken.

It is also urged that plaintiff knew of the dangerous condi-
tion of the roof of the stope, and was therefore guilty of
contributory negligence, or with knowledge of the danger as-
sumed the risk of continuing in his employment.  It is true
that plaintiff knew that water came from the place where the
cave occurred, and that the rock at that point was cracked;
but the question of contributory negligence or knowledge of
danger on the part of the workman is peculiarly a question
for the jury to decide.  It was for the jury to say whether
the facts known to plaintiff ought to have brought home to him
knowledge of the danger.  (*Habishaw* v. *Standard Quick-
silver Co.,* 131 Cal. 430, [63 Pac. 728] ; *Sanborn* v. *Madera
Flume etc. Co.,* 70 Cal. 261, [11 Pac. 710] ; *Magee* v. *North
Pac. Coast R. R. Co.,* 78 Cal. 430, [12 Am. St. Rep. 69, 21
Pac. 114] ; *Martin* v. *California Cent. Ry. Co.,* 94 Cal. 326,
[29 Pac. 645] ; *Union Pac. Ry. Co.* v. *Jarvi,* 53 Fed. 65, [3
C. C. A. 433].)  In this last-mentioned case it is said: ''Of
course the master is required to exercise a care and a dili-
gence in the preparation and subsequent inspection of such a
place as a room in a mine that is not in the first instance
demanded of the servant. . . . The degrees of care required
of the master and the servant also differ, because defects in
a piece of machinery or in the roof of a mine that, to the
eye of a competent inspector such as the master employs, por-

tend unnecessary and unreasonable risks and great danger, may have no such significance to a laborer or miner who has had no experience in watching or caring for machinery or roofs of stopes in a mine.'' In the case at bar plaintiff was a ''mucker,'' that is, a common laborer engaged in moving rock and ore by the aid of a wheelbarrow; and the matter of timbering was in charge of an underground mine manager.

The judgment is affirmed.

Harrison, P. J., and Cooper, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 16, 1906, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 19, 1906.